**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **VALENTYNA GUDYM,** | |
| Plaintiff, | |
| v. | Civil Action No. 1:12-CV-646-AJT-TCB |
| **BANK OF AMERICA, N.A.** | |
| Defendant. | |

**MS. GUDYM'S OPPOSITION TO DEFENDANT**
**BANK OF AMERICA'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Valentyna Gudym, by counsel, and for her Memorandum in Opposition to the Motion to Dismiss of Defendant Bank of America, N.A. ("Defendant"), she states as follows:

I.     **FACTUAL BACKGROUND**

This case arises from claims based on Virginia common law for breach of contract, breach of the implied covenant of good faith, and for violation of the federal Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. In particular, the Complaint alleges that Ms. Gudym applied for a loan modification with Defendant in the Fall of 2009. (*See* Compl ¶ 9). And that Defendant ultimately offered Ms. Gudym a permanent loan modification (the "Agreement") around December 11, 2009, which Ms. Gudym accepted on December 29, 2009, when she mailed a signed copy of the Agreement to Defendant with her first payment. (*See* Compl ¶¶ 9-11). A copy of the Agreement is attached to the Complaint as Exhibit A. The terms of the Agreement, among other things, modified Ms. Gudym's monthly mortgage payments, cured any arrearage, and modified her principal balance to $341,657.03. (*See* Compl ¶¶ 12-14;

Ex. A). The Complaint further alleges that Ms. Gudym paid Defendant under the terms of the Agreement for approximately one year until Defendant inexplicably refused to accept her modified payment amounts without any explanation. (*See* Compl ¶¶ 16-17). Instead, Defendant commenced foreclosure activities on Ms. Gudym's property and assessed late fees and other charges for her alleged delinquency. (*See* Compl ¶¶ 18, 29).

The Complaint also alleges that Ms. Gudym, through counsel, sent a Qualified Written Request ("QWR") on August 25, 2011, to Defendant regarding its refusal to accept the modified payments and insisting that Defendant conduct in investigation of her payments pursuant to the Agreement. (*See* Compl ¶¶ 19, 37). The August 25, 2011 correspondence further requested Defendant to provide full accounting of all charges, debits and credits assessed to Ms. Gudym's loan after the date of the Agreement. (*See* Compl ¶ 20). Defendant did not timely provide a written notice of the receipt of Ms. Gudym's Qualified Written Request; nor did it conduct any investigation whatsoever regarding Ms. Gudym's inquiries regarding her modification and payments. (*See* Compl ¶ 40). It is further alleged that Defendant's failure to provide a written response acknowledging the receipt of Ms. Gudym's Qualified Written Request and failure to conduct any investigation whatsoever into the factual allegations therein appears to be a pattern and practice of misconduct in violation of RESPA. (*See* Compl ¶ 41).

In response, Defendant filed a Motion to Dismiss all three counts in the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of its motion, Defendant argues that the Complaint does not adequately state a claim for relief because (1) her breach of contract claim is barred by the statute of frauds; (2) Virginia does not recognize claims for breach of the implied covenant of good faith and fair dealing arising from real property loans; and (3) Plaintiff fails to allege actual damages caused by Defendant's RESPA violations or a pattern of noncompliance

so as to be entitled to statutory damages. (See Def.'s Mem. 3, 4, 8). Such arguments are unsupported by the factual allegations in the Complaint, Virginia law, and the limitations imposed by the limitations of a Rule 12(b)(6) motion.

## III.   ARGUMENT

### A. The Complaint contains sufficient detail to satisfy Rules 8(a)(2) and 12(b)(6).

Defendant supports its motion to dismiss by simply ignoring the salient facts alleged in the Complaint and disregarding the limitations of a Rule 12(b)(6) motion.  This Court recently summarized "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Engel v. Francis*, 2011 WL 797244, *1 (E.D.Va. Feb. 25, 2011). Plaintiff will not burden the Court with its repetition here. Suffice it to say that these detailed factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiff has stated a claim under Virginia common law and RESPA for the relief she has requested.

The largest divide between the Plaintiff's position and Defendants' arguments is the Parties' understanding of Rules 8(a)(2) and 12(b)(6). While Defendants prefer a plaintiff to outline in full detail all facts that might be offered on summary judgment or at trial, a complaint actually satisfies Rule 8 if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). In this case, Ms. Gudym has alleged sufficient detail by which the Defendants can answer and by which the Court can determine the plausibility of her claims.

### B. The Complaint Sufficiently Alleges that the Existence of a Loan Modification Agreement between Ms. Gudym and Defendant.

It is an elementary rule of Virginia law that to establish claim for a breach of contract, a plaintiff must first establish that there was a valid contract to be breached. *See, e.g., Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980). The essential elements of a contract are offer and

acceptance, with valuable consideration. *Id*. All three of these elements are adequately alleged in the Complaint. Specifically, Ms. Gudym alleges: (1) that the Defendant offered her the permanent loan modification on or around December 11, 2009 (Compl. ¶ 11); (2) that Ms. Gudym accepted the offer on December 29, 2010 (Compl. ¶ 14); and (3) that the agreement was supported by adequate consideration, namely the cure of any arrearage, new monthly payment amounts, and a new principal balance. (Compl. ¶ 12-13). Accordingly, the Complaint adequately alleges a valid contract between Ms. Gudym and Defendant.

Defendant's real position is not that the Complaint does not adequately plead that there was a valid contract, but that the contract is not enforceable as a matter of law because of the statute of frauds. However, it is elementary that a contract "within the ambit of the statute of frauds is not *void ab inito*." *See, e.g., T. v. T.*, 216 Va. 867, 872 (1976). Instead, the statute is "remedial in nature, and is concerned, not with the validity of the contract, but with its enforceability." *Brown v. Valentine*, 240 F. Supp. 539, 541 (W.D. Va. 1965); *Stein v. Pulaski Furniture Corp.*, 217 F. Supp. 587, 589 (W.D. Va. 1963). Therefore, in certain cases, a court may avoid the statute and enforce an otherwise valid agreement. *T.*, 216 Va. at 872. Those cases include when enforcement of the statute would cause a wrong to be perpetrated in violation of the statute's purpose or where there has been part performance of the agreement. *See Reynolds v. Dixon*, 187 Va. 101, (1948) (finding that "the statute was founded on wisdom and sound policy. Its primary object was to prevent the setting up of pretended agreements and the supporting them by perjury…. It was not intended that the statute should perpetrate frauds."); *Troyer v. Troyer*, 231 Va. 90, 94 (1986)(stating "[b]ecause its object is to prevent fraud, it will not be applied when to do so would result in a fraud or perpetrate a wrong."); *T.*, 216 Va. at 871 (determining "under certain circumstances, where there has been part performance, a court in equity will avoid the

4

statute and enforce an oral agreement."). Moreover, Virginia court have repeatedly found that a person may be estopped from asserting the statute of frauds as a defense, even in the absence of actual fraud, if that person has misled another to her prejudice *or* that the innocent party acted in reliance upon the conduct. *Id*. at 872-873. All three of these circumstances are present in the instant case.

Before addressing the applicability of these doctrines, it is important to begin by acknowledging that Defendant does not claim that it did not sign the Agreement attached as Exhibit A to the Complaint. Instead, Defendant merely asserts that the copy of the Agreement attached to the Complaint does not contain its signature. Moreover, Defendant does not deny that it honored the Agreement or that it accepted Ms. Gudym's payments pursuant to the Agreement. Instead, Defendant concludes that Ms. Gudym fails to state a claim because she does not allege the existence of an agreement signed by Defendant or provide evidence of the actual signature. This is an incorrect application of Virginia law. What Defendant actually means is that Ms. Gudym's claim is barred due to the absence of Defendant's signature on the Agreement. At this stage in the litigation, however, it is premature to conclude that Defendant never actually signed the Agreement. At this time, Ms. Gudym does not know whether or not the Defendant signed the Agreement when it received it in December 2009. However, it is likely that a signed copy does exist because Defendant recently produced documents that confirm the terms of the Agreement were boarded[1] into Defendant's mortgage servicing system in January 2010.

Nevertheless, even if Defendant did not sign it, however, the Motion to Dismiss should

---

[1]On December 10, 2012, Defendant produced a payment history from its mortgage servicing notes that confirmed the terms of the loan were boarded into its system. Specifically, the accounting shows that Ms. Gudym's principal balance increased from $292,499.60 (the amount under the original Note) to $341,657.03, which is the new principal balance agreed to under the Agreement. *See* Compl. Ex. A (stating "As of the 1st day of January, 2010, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is $341,657.03.... I understand that by agreeing to add the unpaid amounts to the outstanding principal balance, the added amounts accrue interest based on the interest rate below.").

still be denied because: (1) there is proof of a sufficient memorandum to overcome the statute of frauds and applying the statute would perpetrate a wrong; (2) the parties' part performance unequivocally establishes the existence of an Agreement; and (3) equitable estoppel bars application of the statute of frauds defense because of Defendant's conduct.

   1.   **There is Sufficient Proof of a Memorandum to Overcome the Statute of Frauds; and Applying the Statute in this Case Would Perpetrate a Wrong.**

"The purposes of Virginia Code § 11-2 are to provide reliable evidence of the existence and terms of certain types of contracts and to reduce the likelihood that contracts within the scope of this statute can be created or altered by acts of perjury or fraud." *Lindsay v. McEnearney Assocs., Inc.*, 260 Va. 48, 53 (2000). Moreover, the Virginia Supreme Court has stated that "the statute [of frauds] was founded in wisdom and sound policy. Its primary object was to prevent the setting up of pretended agreements and then supporting them by perjury…. It was not intended that the statute should perpetrate frauds." *Reynolds*, 187 Va. 101, 106 (1948). In a more recent line of cases, the Virginia Supreme Court has reiterated that the Statute of Frauds "will not be applied when the result is to cause a fraud or perpetrate a wrong, because the object of the statute is to prevent frauds." *Murphy v. Nolte & Co.*, 226 Va. 76 (1983); *Drake v. Livesay*, 231 Va. 117 (1986); *C. Porter Vaughan, Inc. v. DiLorenzo*, 279 Va. 449 (2010).

The Virginia Supreme Court has also found that the statute of frauds "does not require all contracts within its purview be written. It merely interposes a bar to the enforcement of certain oral contracts, which bar may be removed by proof of a sufficient memorandum of the transaction." *Drake*, 231 Va. at 120. This principal is perhaps best exemplified in *Drake*, where the owner of a piece of real property orally agreed to sell that property to the plaintiff but, before the agreement was reduced to writing, the owner sold it and sent plaintiff a letter of apology that explained that he sold the property for a higher price. *Id.* at 118. In the letter, the owner wrote

"[t]hey had proposed to pay us $38,500.00 for this same property that I had told you we would sell to you…. I think I am entitled to this increase in price." *Id*. After the purchaser sued, the owner successfully demurred on the ground that a contract for the sale of real estate is invalid unless fully reduced to writing and that the owner could sell to the highest bidder until it was reduced to writing. *Id*. In reversing the decision of the trial court, the Supreme Court held "[w]e conclude that the letter reflects [the owner's] misconception that a contract for the sale of real estate is invalid unless fully reduced to writing and that [the owner] might therefore sell to a higher bidder with impunity as long as his contract with [the plaintiff] was merely oral. That view misconceives both the nature and the purpose of the statute of frauds." *Id*. at 122.

Defendant's sole argument in support of its motion suffers from the same flaws as the owner's argument in *Drake*. In sum, Defendant's position is that the statute of frauds invalidates *every* contract within its purview even when all the essential elements of a contract are satisfied. To that end, Defendant wants this Court to ignore written documentation confirming that the parties mutually assented on all the essential terms of the modification and had a distinct intention of modifying the loan because either: (1) Defendant did not provide a copy of its signature to Ms. Gudym; or (2) Defendant made an administrative mistake. This is Defendant's only argument because its other possible defense – that the parties never had a "meeting of the minds" – is directly contradicted by the Agreement and Defendant's own records of Ms. Gudym's loan, which reflect all of the essential terms of the contract between the parties, negating any plausible defense arising out of the statute of frauds. Among other things, the Agreement identifies the contracting parties as Valentyna Gudym and BAC Home Loans Servicing, LP.[2] Ms. Gudym's property address and the original Deed of Trust dated July 19,

---

[2] The Agreement also specifically states that BAC Home Loan Servicing, LP is a subsidiary of Bank of America, N.A.

2006 are both identified. The new principal balance, the new interest rates, and new monthly payment amounts are all identified as well. The Agreement further instructs Ms. Gudym where to make her new modified payments – an instruction that she followed and Defendant accepted for almost one year. Thus, there is sufficient memorandum of the transaction (besides the fact that the parties actually honored the contract) to remove the bar to the enforcement imposed by the statute of frauds.

Applying the statute of frauds under these circumstances would be contrary to the very purpose of the statute. There is more than reliable evidence that a contract existed between the parties and it is seemingly impossible that the contract was created or altered by Ms. Gudym because it is a standard form contract provided by the Defendant, which mirrors other modifications it has provided to consumers. Furthermore, the Agreement contains a unique bar code created by Defendant to help track the data in the modification agreement and to prevent submission of fraudulent agreements. This bar code would confirm that Defendant offered a specific and definite set of terms, which were not altered by fraud or perjury as contemplated by the statute of frauds. Allowing Defendant to now disavow the Agreement would perpetrate a wrong because, at best, the lack of a signature was the result of an administrative mistake.

Accordingly, the Defendant's motion to dismiss should be denied because Ms. Gudym pled all the required elements to establish a valid contract and provided proof of a sufficient memorandum to overcome the purposes of the statute of frauds.

## 2. The Doctrine of Part Performance Unequivocally Demonstrates an Agreement.

Defendant's motion to dismiss should also be denied because the parties part performance of the Agreement. The Supreme Court has repeatedly stated that when invoking the defense of part performance to overcome the statute of frauds, a party must show: (1) the parol

agreement relied on is "certain and definite in its terms," (2) the acts proved in part performance "refer to, result from, or were made in pursuance of the agreement," and (3) the agreement was "so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation." *See, e.g., Runion v. Helvestine*, 256 Va. 1 (1998). There is little doubt that all three prongs of this test are satisfied by the circumstances alleged in the Complaint.

First, the Agreement is obviously certain and definite in its terms for the reasons in the previous section of this memorandum, namely because all of the essential terms are reflected in the modification including the new principal balance, the new monthly payment amount, the modified term of the loan, the adjusting interest rate, and the remedies permitted upon breach. (*See* Compl. Ex. A). Moreover, the Agreement specifically states that it "amends and supplements" Ms. Gudym's Note and Deed of Trust, which are further incorporated into the Agreement. Thus, the new terms of the Agreement combined with the original terms of the Note and Deed of Trust demonstrate certain and definite terms.

Second, Ms. Gudym's conduct resulted from and was made pursuant to the terms of the Agreement. As alleged in the Complaint, Ms. Gudym made payments under the terms of the Agreement for nearly one year. (*See* Compl. ¶ 16-17). In doing so, she made the modified payments to Defendant at the location identified in the Agreement and Defendant accepted these payments without notifying her of any apparent delinquency. (*See* Compl. ¶ 18). Defendant's account notes produced after the Complaint was filed also reflect that it boarded the modification pursuant to the terms of the Agreement on January 28, 2010. Thus, not only did Ms. Gudym conduct herself pursuant to the Agreement, but the Defendant's conduct complied with it as well for nearly a full year.

Third, assuming, *arguendo*, that the Agreement was not signed due to on administrative oversight, a refusal of full execution would operate as a fraud upon Ms. Gudym, and place her in a situation which does not lie in compensation because her home is recognized as a unique property under Virginia law. Under the circumstances, the agreement was a standard form modification that Defendant provides to eligible consumers. This was not an arm's length transaction where Ms. Gudym and Defendant were on equal footing to negotiate the terms of her modified loan. Rather, Ms. Gudym applied for a modification of her loan and Defendant offered her a *permanent* modification under criteria that made it beneficial for Defendant to modify her loan, namely adding $49,157.43 to her original principal. Now, Defendant is attempting to exploit the unverified lack of its signature on the very agreement it offered (and ultimately honored by accepting her payments and boarding the loan) to Ms. Gudym. Accordingly, the Defendant's motion should be denied because the parties' part performance is sufficient to overcome the statute of frauds.

### 3.   Equitable Estoppel Precludes Defendant's Statute of Frauds Defense.

The doctrine of equitable estoppel also bars application of the statute of frauds in the case at hand. The seminal case in Virginia dealing with the use of equitable estoppel to bar application of the statute of frauds is *T. v. T*, 216 Va. 867 (1976). In that case, the Supreme Court of Virginia held that "to establish equitable estoppel, it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice, or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped." *Id*. 872-873 (internal citations omitted). In applying this principle, the Virginia Supreme Court ruled that the "elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment." *Id*. at 873.

Federal courts in Virginia have also applied this rule in a recent line of cases, finding that the doctrine of equitable estoppel may be properly applied when detriment results solely from the defendant's failure to perform under the contract. *See, e.g., Nargi v. Camac Corp.,* 820 F. Supp. 253 (W.D. Va. 1992); *Tidewater Beverage Services, Inc. v. Coca-Cola Co.,* 907 F. Supp. 943 (E.D. Va. 1995). In *Tidewater Beverage*, the Court held that absent a showing of fraud, the four elements originally articulated in *T. v. T.* must be met for equitable estoppel to apply. 907 F. Supp. at 946. In that case, defendant Coca-Cola orally represented to plaintiff that it had no plans to take its service work in house and plaintiff incurred a significant amount of money in capital improvements in reliance upon the representation. *Id*. After plaintiff purchased the expensive equipment, Coca-Cola moved its service work in-house, leaving Tidewater with equipment it could not use. *Id*. Based on these facts, the Tidewater court denied Coca-Cola's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, finding that the complaint established the necessary four elements for the application of equitable estoppel. *Id*. at 946.

The United States District Court for the Western District of Virginia also applied the doctrine of equitable estoppel in *Nargi v. Camac Corp.*, 820 F. Supp. 253 (W.D. Va. 1992). In *Nargi*, plaintiff alleged that the defendant represented to him that his employment with defendant would last for at least four years. *Id*. at 255. Concerned that the four year term was not expressed in the letter detailing plaintiff's terms of employment, plaintiff asked the defendant about the omission. *Id*. According to the plaintiff, Defendant replied "No! We want you for the long term." *Id*. After plaintiff was terminated, he filed a lawsuit against defendant for breach of contract, and defendant filed a motion for summary judgment on the grounds that any oral promise was barred by the statute of frauds. *Id*. at 256. The court found that plaintiff was entitled to use the doctrine

of equitable estoppel to avoid the statute of frauds defense because all four elements established by the Virginia Supreme Court were satisfied. *Id*. Specifically, the court found: (1) that plaintiff alleged a sufficient representation that defendant wanted to employ him long-term; (2) that his reliance on the representation was reasonable; and (3) that plaintiff change his position to his detriment because he sold his home, moved his family, and closed his consulting business. *Id*. at 258.

Like *Tidewater* and *Nargi*, all four elements of equitable estoppel are present in the instant case, especially when taking the facts in a light most favorable to Ms. Gudym for the purposes of Fed. R. Civ. P. 12(b)(6). The first element was met when Defendant represented to Ms. Gudym that it would modify her loan in accordance with the terms of the Agreement that it provided to her. Ms. Gudym relied on this representation when she accepted the modified terms and paid her mortgage in accordance with the new monthly payment amount for approximately one year. Ms. Gudym changed her position and abided by all terms of the Agreement, including the new payment and principal amounts. When Defendant stopped honoring the Agreement, rejected her timely mortgage payments, and charged Ms. Gudym with late fees, interest, additional penalties, and attempted to foreclose her home as if the Agreement never occurred, Ms. Gudym realized that her reliance on this Agreement was to her detriment. For these reasons, the Court should deny Defendant's motion to dismiss.

### C. The Complaint Sufficiently Alleges a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The second count of the Complaint seeks damages based on Defendant's alleged breach of the implied covenant of good faith and fair dealing. In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) the existence of a contract; and (2) a breach of the implied covenant. *Enomoto v. Space Adventures, Ltd*., 624

F.Supp.2d 443, 450-51 (E.D.Va. 2009).Specifically, Ms. Gudym alleges that the Agreement is a valid contract, and like all contracts in Virginia, contains an implied covenant of good faith and fair dealing. (*See* Compl. ¶ 32). Ms. Gudym further alleges that Defendant breached the implied covenant by, *inter alia*, offering and encouraging her to participate in a loan modification, instructing her to make newly required payment amounts pursuant to the Agreement, refusing to honor the payments after accepting them for nearly one year, and by initiating a foreclosure proceeding even though it had knowledge that Ms. Gudym was compliant with the Agreement. (*See* Compl. ¶ 33).

Defendant puts forth two arguments in support of its motion to dismiss count two of the Complaint. First, Defendant argues that Ms. Gudym fails to state a cause of action because her claim is outside the purview of the U.C.C., and, therefore, her claim must fail. (Def.'s Mem. 6). Second, Defendant hedges this position by further arguing that Ms. Gudym's claim for breach of contract is based on the exact same alleged conduct; therefore, does not give rise to a separate cause of action. These arguments are contradicted by Virginia law and the facts pled in the Complaint.

### 1.  Virginia Recognizes Covenant of Good-Faith and Fair Dealing in All Contracts.

Defendant's first argument is that Virginia law does not recognize an implied covenant of good faith and fair dealing in contracts outside those governed by the Uniform Commercial Code. (Def.'s Mem. 6). In support of this position, Defendant exclusively relies on this Court's decision in *Harrison v. US Bank Nat'l Ass'n*, 2012 U.S. Dist. LEXIS 85735 (E.D. Va. June 20, 2012) and without reference to any of this Court's decisions directly on point with this issue. *See Enomoto v. Space Adventures*, Ltd., 624 F.Supp.2d 443, 450-451 (E.D. Va. 2009); *Bourdelais v. JPMorgan Chase Bank*, N.A., 2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012) (Hudson,

J.); *Acuna v. Chase Home Finance, LLC*, 2011 U.S. Dist. LEXIS 52971 (E.D. Va. May 17, 2011) (Spencer, J.).

The Harrison decision created two competing lines of cases that deal with the issue before the Court in count two of the Complaint. Defendants have only cited *Harrison* (and Plaintiff cannot find any other Virginia case) which holds that Virginia does "not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code (U.C.C.), and the U.C.C. 'expressly excludes the transfer of realty from its provisions.'" *Harrison*, 2012 U.S. District at *5-6 (citing *Greenwood Assocs., Inc. v. Crestar Bank*, 248 Va. 265, 270 (1994). To support this holding, however, the Harrison court relied on the Virginia Supreme Court decision in *Greenwood*, which dealt with a different claims than those before the Court in this case and in *Harrison*. Specifically, the plaintiff in *Greenwood* alleged that defendant's *actually* violated the "good-faith obligation" set forth in § 8.01-203 of the Uniform Commercial Code by failing to properly apply the sale proceeds after a foreclosure sale of the subject property. *Id*. at 268-270. To that end, the Greenwood court never held or opined that Virginia does not recognize an implied covenant of good-faith and fair dealing in contracts outside the UCC. This is because the § 8.9-104 of the UCC expressly excludes the transfer of realty from its provisions and the plaintiff did not allege a common law claim. Thus, based on the exclusion in the UCC, the Greenwood court concluded the plaintiff did not state cause of action as it pertained to § 8.01-203 of the Virginia UCC.

The *Greenwood* decision was the primary basis for this Court's decision in *Harrison*, which dismissed the claim without addressing whether Virginia common law recognized a common law claim for breach of the implied covenant of good-faith and fair dealing. Moreover, the Harrison decision does not even reference any of the second line of cases directly on point.

Instead, the only analysis provided by the Court was the following three sentences:

> Harrison also alleges that the defendant breached the implied covenant of good faith and fair dealing by accelerating the note and foreclosing on the property. In particular, he points to the fact that the amount due on May 1, 2011, had to be paid by May 2, 2011, in order to avoid acceleration and foreclosure. Virginia, however, does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code (U.C.C.), and the U.C.C. "expressly excludes the transfer of realty from **[*6]** its provisions." *Greenwood Assocs. Inc. v. Crestar Bank*, 248 Va. 265, 270, 448 S.E.2d 399, (1994); *see also* Va. Code Ann. § 8.9A-109(d)(11) ("This title does not apply to the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder. . . .") (previously codified at Va. Code Ann. § 8.9-104)(j) (repealed by 2000 Va. Acts 1007, eff. July 1, 2001)). As a result, the plaintiff is barred by statute from arguing that the defendant breached the implied covenant of good faith and fair dealing, and his claim must therefore be dismissed.

*Id*. at 5-6. With all due respect to the *Harrison* decision, Ms. Gudym believes that second line of cases dealing with this issue are better reasoned and more in line with governing Virginia precedent on this issue.

Within the past twenty years, the Supreme Court of Virginia has expressly found that an implied covenant of good faith and fair dealing applies to all contracts, both common law and those governed by the Uniform Commercial Code. In particular, the court stated "in Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights. ***This is so under either the common law or the Uniform Commercial Code*** (even assuming a dealership agreement is a contract for the sale of goods)." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379 (1997) (emphasis added). Based on this language alone – which is not even referenced (let alone distinguished) in Defendant's brief -- the Court should deny Defendant's motion to dismiss count two.

This Court has also not been silent on this issue. First, Judge Spencer in *Acuna*, a case that runs on all four corners with the instant case, determined that a plaintiff sufficiently alleged a claim for the common law implied covenant of good-faith and fair dealing by: (1) inducing him

to default by telling him his chances of receiving a loan modification would increase if he did so; (2) falsely assuring him about the status of his modification; (3) falsely assuring him the home would not be sold at the foreclosure sale; and (4) failing to follow HAMP guidelines. *Acuna*, 2011 U.S. Dist. LEXIS at *16. This Court reached a similar conclusion in *SunTrust Mortg., Inc. v. Mortgs. Unlimited, Inc.,* 2012 U.S. Dist. LEXIS 74106 (E.D. Va. May 29, 2012). Finding that the party adequately alleged a claim, Judge Hudson specifically addressed *Ward Equip.*, writing:

> The Fourth Circuit, however, has made clear that every contract governed by the laws of Virginia contains an implied covenant of good faith and fair dealing. *See Va. Vermiculite, Ltd. v W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998); *see also, Enomoto*, 624 F.Supp.2d at 450. Indeed, SunTrust's reliance on the Virginia Supreme Court's decision in *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379 (1997), is misplaced. In *Ward's*, the court declared that "when parties to a contract create valid and binding rights [under the laws of Virginia], an implied covenant of good faith and fair dealing is inapplicable to those rights." This statement, however, "addressed only conduct that Defendant was explicitly authorized to undertake by contract." *Enomoto*, 624 F.Supp.2d at 450. Thus, the Virginia Supreme Court's decision does not contradict the general rule that all contracts contain an implied covenant of good faith and fair dealing. Rather, as observed by the Fourth Circuit, "although the duty of good faith does not prevent a party from exercising its explicit contractual *rights* [under Virginia law], a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Vermiculite*, 156 F.3d at 542.

*Id*. at *10; *see also Bourdelais*, 2012 U.S. Dist. LEXIS at *15 (denying defendant's motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the plaintiff alleged sufficient facts, if true, to show: (1) a contractual relationship; and (2) unreasonable conduct and bad faith).

Based on the aforementioned case law, the Court should deny Defendant's motion to dismiss because the Virginia Supreme Court and other cases establish that a covenant of good faith and fair dealing exists in all contracts in Virginia, not just those governed by the UCC.

**2.  Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Not Based on the Same Conduct as her Breach of Contract Claim.**

Without citing a single source of authority on the issue, Defendant also contends that Ms. Gudym failed to state a claim for breach of the implied covenant of good faith and fair dealing because Ms. Gudym "has made a claim for breach of contract for the exact same conduct." (Def.'s Mem. 6). Once again, this argument simply ignores the salient facts alleged in the Complaint, which allege that the implied covenant of good faith and fair dealing were breached by, *inter alia*, offering and encouraging Ms. Gudym to participate in a loan modification, refusing to honor the payments after accepting them for nearly a year, and instituting a foreclosure proceeding even though it had knowledge that Ms. Gudym was compliant with the Agreement. (Compl. ¶ 33). If true, these allegations more than sufficiently state claim for breach of the implied covenant of good faith and fair dealing, which prohibits "a party from acting arbitrarily, unreasonably, and in bad faith." *See SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*, 2012 U.S. Dist. LEXIS 74106, *8-9 (E.D. Va. May 29, 2012).

Under Virginia law, "the duty of good faith and fair dealing implicit in every contract cannot be used to override or modify explicit contractual terms." *Clemons v. Home Savers.*, LLC, 530 F. Supp. 2d 803, 812 (E.D. Va. 2008) (citing *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994). However, the Fourth Circuit has stated that "it is a basic principle of contract law in Virginia… that a party may not exercise contractual discretion in bad faith…."). *Virginia Vermiculite Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998). Moreover, this Court has stated that the duty of good faith and fair dealing "also prohibits one party from acting in such a manner as to prevent the other party from performing its obligations under the contract." *SunTrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 74106, at *9.

The factual allegations supporting Ms. Gudym's claim for breach of the implied covenant of good faith and fair dealing are not based on any express terms of the Agreement. Rather, it is

based on Defendant's conduct inducing her to default under the Note and Deed of Trust by offering her the Agreement, which it initially honored by boarding the loan and accepting payments. Then inexplicably denying her payments made in accordance with the Agreement, which caused her to be allegedly delinquent and responsible for excessive fees and charges. Moreover, even after Defendant was notified of its mistake in processing the Agreement and the subsequent payments, it still ignored her requests to investigate the status and proceeded to initiate a foreclosure and charge significant late fees on a loan that was current. Thus, Defendant not only prevented Ms. Gudym from performing her obligations under the Agreement and Note, but it also acted unreasonably and in bad faith in moving forward with the foreclosure without any explanation or investigation. Accordingly, the Complaint alleges sufficient facts to state a claim under Virginia law.

### D. The Complaint Sufficiently Alleges a Claim for a Violation of RESPA.

In its brief, Defendant contends that the alleged violation of RESPA must be dismissed for two reasons. First, Defendant asserts that the claim should be dismissed because "Plaintiff has not alleged any damages proximately caused by the alleged RESPA violation." (Def.'s Mem. 7). Second, Defendant claims that Plaintiff has failed to state a claim because Plaintiff's assertion that Defendant's conduct is a "pattern and practice" of misconduct is not substantiated with any factual allegations whatsoever. *Id*. These arguments are both factually and legally incorrect.

Before addressing each argument in turn, it is important to recognize that the Supreme Court of the United States has specifically held that its decisions under *Twombley* and *Iqbal* do not require a heightened pleading standard, and that includes allegations that a defendant violated RESPA. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). While Defendants prefer a plaintiff to outline in full detail all facts that might be offered on summary judgment or at trial, a complaint

actually satisfies Rule 8 if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the… the claims is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Complaint more than satisfies this requirement.

Count III of the Complaint arises from an alleged violation of 12 U.S.C. § 2605(e), "which established the duty of loan servicers to respond to borrower inquiries." *Bourdelais*, 2012 U.S. Dist. LEXIS at *24. In order to state a claim for a violation of RESPA based on Defendant's failure to timely respond to a qualified written request, the plaintiff must allege that (1) she sent a qualified written request[3] to the servicer of a federally related mortgage; (2) that the servicer did not respond within the required period provided by the statute; and (3) damages. The statute provides:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). *Carter v. Countrywide Home Loans, Inc.*, Civil No. 3:07cv651, 2008 U.S. Dist. LEXIS 67014, at *19 (E.D.Va. 2008). Furthermore, the obligation of the servicer is:

> Upon receiving a "qualified written request," the statute directs a loan servicer, within 60 days, to make corrections to the borrower's account, or to conduct an investigation of the borrower's account. 12 U.S.C. § 2605(e)(2)(A)-(C). The investigation must result in a statement of the reasons for which the servicer believes the account of the borrower is correct, the production of information requested by the borrower, or an explanation of why the information requested is unavailable. *Id.* Additionally, the loan servicer must provide "the name and

---

[3] RESPA defines a QWR as: a written correspondence other than notice on a payment coupon or other payment medium supplied by the servicer that… (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."

*Id*.

In this case, Plaintiff has sufficiently alleged that Defendant failed to acknowledge receipt of her qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(A) and failed to conduct an investigation within 60 days.

As mentioned, the first step in stating a cause of action pursuant to §2605(e) is alleging sufficient facts that demonstrate Ms. Gudym sent Defendant a QWR. Ms. Gudym alleges that on August 25, 2011, she sent written correspondence to Defendant regarding its refusal to accept her modified payment amounts. (Compl. ¶ 19). And that Ms. Gudym further insisted in her correspondence that Defendant conduct an investigation of the Agreement and correct its improper refusal to accept her payments. (Compl. ¶ 37). Ms. Gudym also requested additional information about the status of her loan, including a full accounting to ensure that Defendant was not improperly assessing late charges and fees. ((Compl. ¶¶ 19, 37). Finally, Ms. Gudym alleges that she sent her written correspondence to the address at which she was instructed by Defendant; that Defendant received the correspondence on August 29, 2011, and August 30, 2011, and that Defendant never responded with the results of its investigation or acknowledged receipt of her QWR. These facts sufficiently allege that Ms. Gudym sent Defendant a QWR within the meaning of the statute and that Defendant failed to respond in violation of §§ 2605(e)(1)(A) and (e)(2)(A)-(C). Thus, the only remaining element is damages.

Shockingly, Defendant contends that Ms. Gudym "fails to plead any casual connection between the alleged RESPA violation and any actual damage." (Def.'s Mem. 8). This position simply ignores Paragraph 41 of the Complaint, which states "[a]s a result of Defendant's violations of 12 U.S.C. § 2605(e), Ms. Gudym suffered actual damages, including but not limited

to: damage to reputation, embarrassment, humiliation and other mental and emotional distress from the placement of her home in foreclosure and excessive fees from the default fees assessed on her loan." (Compl. ¶ 41). This is the precise argument that this Court rejected in *Bourdelais*, where the defendant asserted plaintiff "failed to allege how [the servicer's] alleged RESPA violation caused her any actual damage." 2012 U.S. Dist. LEXIS at *24. Rejecting this argument, Judge Hudson wrote:

> The damage allegations are sufficient to survive the motion to dismiss. Bourdelais asserts that "[a]s a result of this conduct [in violation of § 2605(e)]…, she suffered actual damages including without limitation… loss of employment, damage to reputation, embarrassment, humiliation and other mental and emotional distress. Accordingly, Bourdelais has specified the types of actual damages she seeks and has satisfactorily alleged a casual relationship between the conduct and the harm.

*Id*. at 27; *see also Carter*, 2008 U.S. Dist. LEXIS at *25-26 (denying defendant's motion to dismiss on the grounds that plaintiff sufficiently alleged actual damages (including emotional and mental distress, frustration, humiliation, and damage to reputation) arising from defendant's violation of § 2605(e)).

Defendant's real position is not that the Complaint does not adequately plead a causal connection between Defendant's violation and Ms. Gudym's alleged damages, but rather that the Complaint "fails to explain how [Defendant's] alleged failure to respond to her QWR responses caused her embarrassment and emotional distress." (Def.'s Mem. 8). Of course, this is above and beyond what is required by Fed. R. Civ. P. 8. Even if this was required (which it is not), it is hard to imagine what more explanation Defendant needs to understand the embarrassment and stress caused by Defendant's failure to investigate the status of her loan, which ultimately caused the threatened foreclosure. The fact that Defendant improperly initiated a foreclosure and assessed fees while Ms. Gudym was paying her mortgage as instructed by the Defendant is self-

explanatory. Furthermore, if the Defendant had properly responded to the QWR, Ms. Gudym would not have been charged (and paid) thousands of dollars of improper late and foreclosure fees, which are tangible damages that will be easily calculable at trial.

Ms. Gudym also sufficiently alleges that she is entitled to statutory damages because Defendant's conduct in violation of § 2605(e) appears to be a pattern and practice of misconduct. (Compl. ¶ 43). In response, Defendant asserts that this allegation "is not substantiated with any factual allegations whatsoever that might establish said pattern or practice, and such conclusory allegations fails to save her RESPA claim." (Def.'s Mem. 8). This Court also rejected this exact argument in *Bourdelais*, holding "it would be unreasonable to expect Bourdelais to be able to make more detailed allegations before discovery has been conducted…." 2012 U.S. Dist. LEXIS at *28. And there is little doubt that discovery will show that consumers throughout the country have successfully prosecuted claims against Defendant based on violations of 12 U.S.C. § 2605(e).[4]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. The Plaintiff has asserted a detailed and comprehensive Complaint that more than provides specific facts to support its claims for relief. The Plaintiff has pled sufficient facts to state a claim for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and for RESPA violations, all of which are consistent with the law of Virginia, the Fourth Circuit, and the specific holdings of this Court.

---

[4] Furthermore, Defendant is no stranger to § 2605(e) claims. In this jurisdiction alone, it has been sued within the past year for violating § 2605(e) in: *Rocabruna v. Bank of America*, 1:12-cv-506 (E.D. Va. 2012); *Orebaugh v. Bank of America*, 3:12-cv-335 (E.D. Va. 2012); *Crawford v. Bank of America*, 3:12-cv-846 (E.D. Va. 2012). The Court may take judicial notice of this fact at any stage of the proceeding pursuant to Rule 201 of the Federal Rules of Evidence. *See* Fed. Rules Evid. R. 201 (d).

Respectfully submitted,

**VALENTYNA GUDYM,**


_____/s/_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 – Telephone
(703) 591-9285 – Facsimile
Email: kkelly@siplfirm.com
Email: aguzzo@siplfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January 2013, I caused a true and accurate copy of the foregoing to be served electronically through the CM/ECF to the following individuals:

Anastasia P. Cordova, Esq. (VSB No. 78936)
N. Patrick Lee, Esq. (VSB No. 78735)
McGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, VA 22102-4215
Telephone No.: (703) 712-5000
Facsimile No.: (703) 712-5050

*Counsel for Defendant Bank of America, N.A.*

_____/s/_____
Andrew J. Guzzo, VSB #82170
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 – Telephone
(703) 591-9285 – Facsimile
Email: aguzzo@siplfirm.com